FILED

JUL 1 2 2004

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Thomas G. Houlahan,<br>4602 43rd Street, NW. #1<br>Washington, DC 20016<br>(202) 362-5918<br><br>    Plaintiff,<br><br>Vs.<br><br>World Wide Association of<br>Specialty Programs and<br>Schools, a Corporation,<br>321 N. Mall Drive, T-101<br>St George, Utah 84770<br><br>Freeman Wall Aiello, a Partnership,<br>501 S. Cherry Street, Suite 550<br>Denver, CO 80246<br><br>Kenneth Kay, an Individual,<br>321 N. Mall Drive, T-101<br>St George, Utah 84770<br><br>James Wall, an Individual,<br>501 S. Cherry Street, Suite 550<br>Denver, CO 80246<br><br>    Defendants. | CASE NUMBER 1:04CV01161<br><br>JUDGE: Henry H. Kennedy<br><br>DECK TYPE: Pro se General Civil<br><br>DATE STAMP: 07/12/2004<br><br>JURY ACTION |

## Complaint and Jury Demand

Now comes Plaintiff, Thomas G. Houlahan and hereby complain against the defendants as follows:

1

## Parties

1. Thomas G. Houlahan is domiciled in New Hampshire and resident in the District of Columbia.

2. Defendant World Wide Association of Specialty Programs and Schools (hereinafter "WWASPS") is an association of teen behavior modification facilities.

3. WWASPS is a corporation, organized under the laws of the State of Utah, with its principal place of business in St. George, Utah.

4. Defendant Ken Kay is the president of WWASPS and acted on its behalf in his actions as herein described.

5. Ken Kay is a resident of Utah.

6. Defendant Freeman Wall Aiello is a public relations firm.

7. Freeman Wall Aiello is a partnership organized under the laws of the State of Colorado, with its principal place of business in Denver, Colorado.

8. Freeman Wall Aiello was an agent of WWASPS and acted on its behalf in its actions as herein described.

9. Defendant James Wall is a partner in Freeman Wall Aiello and acted on its behalf in his actions as herein described.

10. James Wall is a resident of Colorado.

### Jurisdiction

11. Defendants have caused injury to Plaintiff through false, misleading and defamatory statements to residents of the District of Columbia and to other persons causing damage to Plaintiff's business and personal reputation with the District of Columbia.

12. Defendants are subject to personal jurisdiction in the District of Columbia pursuant to DC. Code Ann. § 13-423.

13. The amount in controversy exceeds $75,000 exclusive of costs.

14. Jurisdiction is proper in this court pursuant to 28 USC § 1332 for diversity of citizenship.

15. Venue is proper in this court pursuant to 28 USC § 1391.

## General Allegations

16. Plaintiff is a journalist writing principally for United Press International (hereinafter "UPI").

17. For sixteen months, Plaintiff has been investigating the teen behavior modification industry for a series of articles.

18. After speaking with industry experts, it became evident that the World Wide Association of Specialty Programs and Schools, one of the largest operators in the field, was widely believed to be operating below industry standards in a number of areas.

19. In speaking with former facility residents, officials of member facilities and government officials, Plaintiff found persuasive evidence of abuse and neglect at WWASPS facilities.

20. After speaking with psychologists, it became evident that some of the methods employed on the teens at WWASPS member facilities could be psychologically harmful.

21. Upon learning that the results of Plaintiff's investigation were not flattering to WWASPS, the organization defamed Plaintiff in an attempt to damage his credibility with his editor and the public.

22. In the course of his investigation, Plaintiff was told by a witness that a teen by the name of Matt Guvreau, who was a resident at WWASPS' Ivy Ridge Academy in Ogdensburg, New York, was physically assaulted by a junior staff member, causing severe injuries.

23. During an interview, Plaintiff brought this incident to the attention of Jason Finlinson, director and part owner of the Academy at Ivy Ridge and Mr. James Wall of the firm of Freeman Wall Aiello.

24. Mr. Finlinson at first denied that the incident took place. After being told that Plaintiff had a reliable eyewitness, Mr. Wall said he would look into the matter.

25. The following day, Plaintiff received an e-mail from Mr. Wall. In the e-mail, Mr. Wall wrote that Mr. Finlinson had "checked his records" and found that Matt Guvreau had in fact received stitches, but claimed that the injury was the result of "horseplay."

26. Part of Plaintiff's investigation involved looking into claims by parents of teens formerly enrolled in WWASPS facilities that they had been given false information about their children's behavior in order to persuade them to send them to the Tranquility Bay facility in St. Elizabeth, Jamaica.

27. Tranquility Bay School is owned By Jay Kay, the son of Ken Kay, WWASPS' president.

28. In January of 2004, Plaintiff learned that Mrs. Laura Boatright of Gaithersburg, Maryland had recently transferred her son from Ivy Ridge Academy to Tranquility Bay.

29. Plaintiff called Mrs. Boatright to ask her why she was told by authorities at Ivy Ridge that her son should to be moved to Tranquility Bay.

30. In the course of the conversation, Plaintiff learned that Mrs. Boatright was the mother of Matt Guvreau, and that it was Matt who had been moved to Tranquility Bay.

31. On learning this, Plaintiff recounted the witness' account of what had happened to her son and asked what she had been told about the incident.

32. She replied that she had been told that Matt had "jumped into the doorframe."

33. Mrs. Boatright then called Ken Kay.

34. Defendant Kay made false statements to Mrs. Boatright regarding Plaintiff's motivations, truthfulness, and integrity.

35. A press release issued by James Wall on 5 February quoted Ken Kay regarding the exchange: "As soon as we told her about Mr. Houlahan and his agenda, she calmed down and emailed us the detailed notes she took during the exchange with Mr. Houlahan."

36. On 29 January, Defendant James Wall sent an e-mail to Tobin Beck, Senior Editor at UPI in the District of Columbia.

37. In it, Wall wrote: "I definitely feel that the organization I represent is being targeted and attacked in a vicious and subjective manner."

38. Wall also forwarded e-mails he had exchanged with Plaintiff with the request that Mr. Beck read them.

39. The e-mails contained the following defamatory statements, made to Plaintiff, and published to Mr. Beck.

"The fact that you are now purveying your perverse views (torture, abuse, battery, etc.) in personal telephone conversations to parents of children who have contractual relationships with Ivy Ridge/TB could well be an issue for their attorneys to take up."

"I view this conduct as wholly unethical conduct from a journalistic point of view. Not only that, but what you said to Ms. Boatright may well constitute defamation and tortious interference."

"It is clear that your role as a journalist is being eclipsed by your very negative views on WWASPS schools. Contacting a parenting [sic] and ranting forth is well beyond the scope of your duty as a reporter."

40. On 4 February, Wall sent Tobin Beck another e-mail in which Wall wrote: "Thomas stepped outside the boundaries of his work as a UPI stringer and into an 'activist' role."

41. On 5 February James Wall issued a press release, "to education and legal affairs editors" on behalf of WWASPS.

42. Plaintiff alleges on information and belief that the press release was intended to circulate throughout the United States, including the District of Columbia, and did so.

43. The press release quoted Ken Kay as saying: "Mr. Houlahan has gone beyond being a dedicated reporter. He has become what we can only term a destructive and biased force." It also said that: "Kay states that he knows of similar instances in which Mr. Houlahan has called parents and alleged falsities."

44. Both statements are defamatory.

45. On Monday, February 23, 2004, Ken Kay sent out an e-mail "To all our Support Group Leaders."

46. WWASPS has support groups throughout the United States, including the District of Columbia.

47. In the e-mail, Kay wrote: "I would like to thank all of you who have assisted us in contacting the Editor at UPI regarding Mr. Houlahan's (reporter) inappropriateness. We now have documented, court filed information regarding Mr. Houlahan's contact and inappropriate legal advice, counseling, and psychological test coaching to an ex-student (minor). He is clearly out to damage us, our member schools, and your right as parents to do what you need to do for your families."

48. These statements are false and injurious.

49. Defendant Ken Kay knew them to be false or acted recklessly in not determining the truth of the information.

50. Defendant James Wall knew them to be false or acted recklessly in not determining the truth of the information.

**First Cause of Action**

**Intentional Interference with Prospective Economic Advantage by James Wall, WWASPS and Freeman Wall Aiello.**

51. Plaintiff incorporates the preceding allegations of this complaint as though fully set forth herein.

52. Plaintiff's relationship with UPI depends upon his credibility with UPI.

53. Defendant James Wall intentionally and willfully published false and/or misleading information about Plaintiff to Tobin Beck, a Senior Editor at UPI.

54. Defendant James Wall knew the information published was false or acted recklessly in not determining the truth of the information.

55. Defendant James Wall published such false and/or misleading statements with the intent of damaging Plaintiff's reputation, preventing or delaying publication or altering his work, and sabotaging his relationship with UPI.

56. The false and/or misleading information published by defendant James Wall proximately caused Plaintiff to suffer damage to his reputation, loss and delay of income, and economic loss and costs associated with correcting the false and/or misleading statements published by Mr. Wall.

57. James Wall committed these acts within the scope of his authority as WWASPS' public relations representative.

58. James Wall committed the tort in his capacity as a partner in Defendant Freeman Wall Aiello.

59. Plaintiff is entitled to general, special and punitive damages.

## Second Cause of Action

### Defamation By Ken Kay and WWASPS

60. Plaintiff incorporates the preceding allegations of this complaint as though fully set forth herein.

61. Defendant Ken Kay intentionally and willfully made false and/or misleading statements about Plaintiff to Mrs. Boatright and other potential sources.

62. Defendant Ken Kay committed slander *per se*, as his comments adversely reflected upon Plaintiff's conduct in business or a profession.

63. Defendant Ken Kay's comments in the 5 February press release constitute a separate instance of slander *per se*, as his comments adversely reflected upon Plaintiff's conduct in business or a profession.

64. These statements and press release were intended to conceal damaging information about WWASPS facilities and practices and to prevent parents from cooperating in Plaintiff's investigation.

65. Defendant Ken Kay committed these acts within the scope of his authority as President of WWASPS.

### Third Cause of Action

### Libel by James Wall, WWASPS, and Freeman Wall Aiello.

66. Plaintiff incorporates the preceding allegations of this complaint as though fully set forth herein.

67. Defendant James Wall intentionally and willfully published false and/or misleading information about Plaintiff in writing to Tobin Beck, a Senior Editor at UPI.

68. James Wall committed these acts within the scope of his authority as WWASPS' public relations representative.

69. James Wall committed the tort in his capacity as a partner at Freeman Wall Aiello.

70. Plaintiff is entitled to general, special and punitive damages.

### Fourth Cause of Action

### Libel by all Defendants

71. Plaintiff incorporates the preceding allegations of this complaint as though fully set forth herein.

72. James Wall and Freeman Wall Aiello published the 5 February press release, which carried a written repetition of Ken Kay's slander against Plaintiff.

73. The press release was issued on behalf of WWASPS.

74. The press release was approved by Ken Kay, in his capacity as president of WWASPS.

75. The 23 February e-mail to "all our Support Group Leaders" constitutes a separate act of libel by Defendant Ken Kay.

76. The e-mail was issued by Ken Kay in his capacity as WWASPS' president.

77. Plaintiff is entitled to general, special and punitive damages.

78. Now, Wherefore, Plaintiff prays for judgment to be entered against the Defendants for the following:

79. Compensatory damages for direct economic loss and general damages for harm to Plaintiff's reputation;

80. Damages arising from Defendants' defamatory publications;

81. Punitive damages to punish Defendants' conduct and to deter others from publishing similar defamatory and false statements made willfully, maliciously, and with harm to Plaintiff.

82. For costs and attorneys' fees and interest as provided by law.

### Jury Demand

Plaintiffs hereby demand trial by jury of each cause of action set forth herein.

Dated this 12th day of July, 2004

*[signature]*

Thomas G. Houlahan
4602 43rd Street, NW #1
Washington, DC 20016
202-362-5918