UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS G. HOULAHAN,<br><br>                Plaintiff,<br><br>      v.<br><br>WORLD WIDE ASSOCIATION OF<br>SPECIALTY PROGRAMS AND<br>SCHOOLS, et al.,<br><br>                Defendants. | Civil Action 04-01161 (HHK) |

**MEMORANDUM OPINION AND ORDER**

In this suit, Thomas Houlahan alleges that Lance Landre, President and CEO of the C.S. Landre Foundation ("Foundation") (collectively "Defendants") interfered intentionally with Houlahan's prospective economic advantage and committed libel against him. Defendants move to dismiss Houlahan's libel claim on the grounds that their statements consist of opinion, not facts, and are thus protected speech. Further, Defendants move to dismiss Houlahan's intentional interference with prospective economic advantage claim on the grounds that he has failed to allege a business relationship adequate to support his claim.[1] Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that Defendants' motion must be granted in part and denied in part.

---

[1] Subsequent to the filing of this motion, Defendants moved for partial summary judgment with respect to Houlahan's intentional interference with prospective economic advantage claim, and also sought to limit to nominal damages any potential recovery from Houlahan's libel claim (Dkt. #43). Based on the court's decision in this opinion, Defendants' motion for partial summary judgment is moot as it pertains to Houlahan's intentional interference claim.

**I. BACKGROUND**

Since May 2003, Houlahan, a journalist writing principally for United Press International ("UPI"), has been investigating the teen behavior modification industry for a series of articles. First Am. Compl. ¶¶20–21.  In the course of his investigation, Houlahan focused on alleged improprieties with facilities operated by World Wide Association of Specialty Programs and Schools ("WWASPS"), one of the largest operators in the field. *Id.* ¶¶22–24. Houlahan's investigation came to the attention of Landre, Foundation's President and CEO, because Foundation "provides funding for lower income families wishing to enroll their children in WWASPS facilities." First Am. Compl. ¶11.

On Sunday, February 22, 2004, Landre sent an e-mail entitled "UPI and Negative Reporting" to Tobin Beck, Senior Editor at UPI, in which Landre questioned Houlahan's honesty, veracity and journalistic integrity.[2]  *Id.* ¶¶40, 55, 56. Houlahan contends that Landre's statements were "false and injurious," and that Landre "knew these statements to be false or acted recklessly in not determining the truth of the information." *Id.* ¶¶57, 59. In addition, Houlahan alleges that Landre sought to "sabotage" Houlahan's relationship with UPI through his communications with Beck.  *Id.* ¶ 80.

Pursuant to Fed. R. Civ. P. 12(b)(6), the Defendants now moves to dismiss Houlahan's claims for libel and intentional interference with prospective economic advantage.

---

[2]  Specifically, Houlahan objects to two comments in the e-mail: (1) "Honesty is not one of his [Plaintiff's] characteristics to say the least." (2) "Like the Enquirer, Mr. Hullihan's (sp) [sic] approach will sell press today, but with disregard for truth and honesty in obtaining his pay check." First Am. Compl. ¶56.

## II. STANDARD OF REVIEW

A motion to dismiss is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Martin v. Ezeagu*, 816 F. Supp. 20, 23 (D.D.C. 1993) (internal quotations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In addition, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged"). In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), and matters of public record, *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

## III. ANALYSIS

**A. Houlahan's Libel Claim against Landre and Foundation**

To establish a libel claim, a plaintiff must show (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the fault of the defendant in publishing the statement

amounted to at least negligence, and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *Messina v. Fontana*, 260 F. Supp. 2d 173, 176–77 (D.D.C. 2003); *Beeton v. Dist. of Columbia*, 779 A.2d 918, 923 (D.C. 2001).

Defendants' motion raises the discrete issue of whether or not Houlahan has in fact alleged "a false and defamatory statement."[3] More specifically, Defendants contend that the statements contained within Landre's e-mail to Beck are expressions of opinion, and are therefore not actionable.

Defendants rely heavily on *Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984), to argue that expressions of opinion are protected under the First Amendment. Contrary to defendant's construction of the applicable law, however, statements of opinion are not automatically immune from liability. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990) ("We are not persuaded that . . . an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment."); *White v. Fraternal Order of Police*, 909 F.2d 512, 522 (D.C. Cir. 1990) ("[E]ven with a *per se* opinion, the question

---

[3] Defendants primarily challenge the "falsity" of the statements at issue, raising only tangentially whether the statements are capable of defamatory meaning. "A statement is defamatory if it tends to injure the plaintiff in his trade, profession, or community standing, or lower him in the estimation of the community." *Beeton*, 779 A.2d at 923 (*quoting Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000)). Furthermore, "[a]n allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiffs appear 'odious, infamous, or ridiculous.'" *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001). Construing the complaint in the light most favorable to plaintiff, the court holds that questioning a journalist's honesty and integrity qualifies as a defamatory statement. *See Moldea v. New York Times Co.*, 15 F.3d 1137, 1144 (D.C. Cir. 1994) (hereinafter "*Moldea I*"), *rev'd in part on reh'g*, 22 F.3d 310 (D.C. Cir. 1994) (hereinafter "*Moldea II*") ("The review attacks [plaintiff's] competence as a practitioner of his chosen profession, a matter archetypically addressed by the law of defamation.").

is whether the person has made an assertion that can reasonably be understood as implying provable facts.").

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990), the Supreme Court shifted the defamation and libel analysis away from whether a statement constitutes opinion or fact—the framework set forth in *Ollman*—to whether the statement makes direct or implicit factual assertions.[4]  497 U.S. at 18–19; *see also Moldea I*, 15 F.3d at 1144 ("it is now clear that . . . the relevant inquiry is no longer simply whether a challenged statement is "fact" or "opinion").  To illustrate this distinction, the *Milkovich* court explained that

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth.  Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.  Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

497 U.S. at 18–19.

Turning to the language of Landre's e-mail to Beck, the court finds that Houlahan has properly pled an actionable statement.  Based upon a plain language reading of the challenged statements, "[h]onesty is not one of his characteristics to say the least" and "[l]ike the Enquirer,

---

[4]  To assess whether a statement is opinion or fact, the *Ollman* court endorsed a four-factor test: (1) the common usage or meaning of the specific language of the challenged statement itself; (2) the verifiability of the challenged statement; (3) the full context of the statement; and (4) the broader context or setting in which the statement appears.  750 F.2d at 979.  In interpreting the *Ollman* multifactor test in light of the *Milkovich* decision and its progeny, the District of Columbia Court of Appeals has clarified that "[a]lthough the Supreme Court has made it clear, since *Ollman* was decided, that statements of 'opinion' are not constitutionally protected if they assert provably false and defamatory facts, the constitutional principles that animate [] *Ollman* remain equally compelling and equally good law today." *Guilford*, 760 A.2d at 583.  Thus, the *Ollman* factors can continue to inform the court's inquiry, but cannot be the end point of the analysis.

Mr. Hallinan's (sp) [sic] approach will sell press today but with disregard for truth and honesty in obtaining his pay check," First Am. Compl. ¶56, Landre's intended message is clear: that Houlahan is a liar.  Landre's comments are analogous to the "John Jones is a liar" illustration used by the *Milkovich* court, and therefore require the same conclusion—the statement implies a factual underpinning.

In addition, looking at the e-mail in its entirety the court is persuaded that statements other than those focused on by Houlahan may likewise provide the basis for a libel action.  In particular, the court focuses on the statement "I feel that the tactics by Mr. Hullihan [sic] are below standards set for reporters in their busy day to uncover reality."  Def.'s Ex. 1 (E-mail dated Feb. 22, 2004).  In *Moldea I*, the court found similar language contained factual assertions and was therefore actionable.[5]  At issue in *Moldea I* was a statement by a reviewer for the New York Times critiquing a book by an investigative journalist: "But there is too much sloppy journalism to trust the bulk of his book's 512 pages . . . ."  15 F.3d at 1145.  In analyzing this statement, the Court of Appeals held that, "In levying the charge of 'sloppy journalism,' it is inescapable that [the author] implies certain facts—that Moldea plays fast and loose with his sources, that his allegations are not to be believed."  *Id.*  Here, the same implicit factual assertions lie within Landre's words.  Indeed the surrounding language—in which Landre states that Houlahan "is presenting himself with two-bit characters that work with harm, bias and distortion," Def.'s Ex.

---

[5]   In *Moldea II*, the Court of Appeals narrowed the reach of its holding in *Moldea I*, concluding that "when a reviewer offers commentary that is tied to the work being reviewed, and that is a supportable interpretation of the author's work, that interpretation does not present a verifiable issue of fact that can be actionable in defamation." 22 F.3d at 313.  Landre's e-mail is not such a review, therefore *Moldea I* remains applicable.

0

1 (E-mail dated Feb. 22, 2004)—only contributes to the insinuation that Houlahan has utilized unreliable sources and poor reporting techniques.

Moreover, the overall tenor of the e-mail suggests that Landre is in a position where he is aware of facts unavailable to the public at large, and therefore in a superior position to judge the veracity of Houlahan's reporting. For example, Landre states that "[I] support my background by having many years experience with at-risk programs . . . ." *Id.* In addition, Landre notes that "I am the President of a decent size financial non-profit that helps families in many at-risk programs . . . ." *Id.* When Landre's characterization of Houlahan is considered in conjunction with the suggestion that he is an expert in the field, the conclusion that Landre is making factual assertions is reinforced. *See Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977) ("Liability for libel may attach . . . when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader."). Landre does not provide the factual basis for his assertion that "honesty is not is not one of [Houlahan's] characteristics," though does suggests that there is one, accordingly, his statements are actionable. *C.f. Edwards v. Nat'l Audubon Soc'y*, 556 F.2d 113, 121 (2d Cir. 1977) ("Since the basis for this opinion [that plaintiff was a "liar"] was fully set forth, the communication of [defendant's] views cannot be libelous, however mistaken they might be.").

Because Landre's e-mail implies the factual assertion that Houlahan made untrue statements, the court finds that Houlahan's libel claim survives Landre's motion to dismiss.

**B. Houlahan's Intentional Interference with Prospective Economic Advantage Claim**

In addition to his claim for libel, Houlahan alleges that Landre committed the tort of intentional interference with prospective economic advantage.  To establish a claim for intentional interference with prospective economic advantage under District of Columbia law, the evidence must show (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy, and (4) resultant damage.  *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995).

While libel is a reputation-based claim, intentional interference with prospective economic advantage is based on business expectations.  *Carr v. Brown*, 395 A.2d 79, 83–84 (D.C. 1978).  Specifically, prospective advantage is described as "business expectancies, not grounded on present contractual relationships but which are commercially reasonable to anticipate, [and] are considered to be property."  *McManus v. MCI Commc'n Corp.*, 748 A.2d 949, 957 (D.C. 2000) (quotations omitted).  A "prospective advantage," however, may not be actionable if too attenuated or remote.  *See Winder v. Erste*, 2005 WL 736639, at *14 (D.D.C. Mar. 31, 2005) ("[T]he caselaw recognizes the common-sense proposition that there will be situations where the expectancies may be 'too remote' to give rise to a 'business expectancy.'") (quotations omitted).

In *McManus*, the Court of Appeals for the District of Columbia explored the scope of the "business expectancy" requirement, ultimately circumscribing its reach.  Despite the plaintiff's contention that she had a "long-term employment relationship and an expectancy of continuing

employment relations with [her employer]," the court refused to permit the plaintiff to "maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship . . . ." 748 A.2d at 957.

Because courts within this jurisdiction have not permitted an at-will employee-employer relationship to provide the basis for a reasonable business expectancy, *see id.*; *see also Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 72 (D.D.C. 2005), this court is similarly unwilling to allow the employment relationship at issue here to serve as the foundation for an interference claim. The full extent of Houlahan's articulation of his relationship with UPI is contained in the phrase, "Plaintiff is a journalist writing principally for United Press International." First Am. Compl. ¶20. Houlahan does not contend that he worked pursuant to a contract with UPI, that he expected to form a contractual relationship with UPI, or that his series on the teen-behavior modification industry was written at UPI's behest. The most positive inference that the court can make from Houlahan's description is that his employment relationship with UPI is that of freelance journalist and news service organization. As such, Houlahan has failed to show "the existence of a valid business relationship or expectancy."

Nor is this case similar to *Browning v. Clinton*, 292 F.3d 235, (D.C. Cir. 2002), in which the plaintiff-author asserted a claim against the defendant for interfering with her efforts to publish a novel. In reversing a dismissal, the Court of Appeals expressed skepticism that, standing alone, the plaintiff's conclusory allegation that she "had a reasonable expectation" of selling her book to a publisher could establish a "reasonable business expectancy." *See id.* at 242. However, because the plaintiff alleged numerous additional facts that supported the reasonableness of her business expectancy, the Court of Appeals reversed the dismissal of her

9

claim.  The court concluded that, because an editor at the publishing company "'encouraged' the plaintiff to continue working on the book," and because *Esquire* and *Publisher's Weekly* had provided favorable press coverage, "the later describ[ing] her novel as a 'bombshell' that 'could knock Primary Colors right out of the headlines," the plaintiff's business expectancy was sufficiently reasonable.  *Id.* at 242–43.  In the case at hand, Houlahan fails to allege any such facts which would support such a favorable inference.

Accordingly, Houlahan has failed to state a claim for intentional interference with prospective economic advantage and the court must grant Defendants' motion to dismiss this claim.

### IV. CONCLUSION

For the aforementioned reasons, it is this 28th day of March, 2006, hereby

**ORDERED** that Landre and Foundation's motion to dismiss (Dkt. #21) is **DENIED** as it relates to Houlahan's libel claim and **GRANTED** as it applies to Houlahan's claim for intentional interference with prospective economic advantage.

Henry H. Kennedy, Jr.
United States District Judge