## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **THOMAS G. HOULAHAN,**<br><br>             **Plaintiff,**<br><br>       **v.**<br><br>**WORLD WIDE ASSOCIATION OF**<br>**SPECIALTY PROGRAMS AND**<br>**SCHOOLS, et al.,**<br><br>            **Defendants.** |

**Civil Action 04-01161 (HHK)**

## MEMORANDUM OPINION AND ORDER

In this suit, plaintiff Thomas Houlahan, a journalist, brings various causes of action against several defendants, including World Wide Association of Specialty Programs and Schools ("WWASPS") and its President, Kenneth Kay (collectively "defendants") asserting claims arising from defendants' actions allegedly in response to Houlahan's investigation of the teen behavior modification industry.

Before the Court is defendants' second renewed motion for partial summary judgment as to Houlahan's claim of abuse of process [#103], a claim that is grounded on a lawsuit defendants filed against Houlahan in Utah.  Houlahan asserts that the lawsuit was baseless and was instituted to deter him from further investigating WWASPS and his publisher from publishing his work. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted.[1]

---

[1]      Houlahan's claims against WWASPS and Kay have been resolved except for his claims of libel, defamation, and abuse of process.

# I.  BACKGROUND

## A.  Factual Background

WWASPS is an association of teen behavior modification facilities located around the world.  Houlahan, a journalist writing principally for United Press International ("UPI"), began to investigate the teen behavior modification industry in the spring of 2003.  His investigation focused on alleged improprieties within facilities operated by WWASPS and led him to draft a series of articles focused on WWASPS and its member schools.  During the investigation, Houlahan's work came to the attention of WWASPS and its president Kenneth Kay.

Houlahan's investigation of WWASPS led WWASPS to file a lawsuit against Houlahan in Utah, alleging claims of intentional interference with prospective economic advantage, injurious falsehood, and defamation.  The Utah suit was ultimately dismissed for lack of personal jurisdiction, a decision that was affirmed on appeal.  *See World Wide Assoc. of Specialty Programs & Sch. v. Houlahan*, 2005 WL 1097321, at *1 (10th Cir. May 10, 2005).  Houlahan claims that the Utah lawsuit was an abuse of process for which defendants should be held liable.

## B.  Procedural Background

Defendants previously sought partial summary judgment on Houlahan's abuse of process claim.  This Court granted defendants' initial motion for summary judgment, but later granted Houlahan's motion to alter or amend the judgment and denied defendants' motion for summary judgment without prejudice.  The Court indicated, however, that the motion could be renewed after discovery had been completed.  After the completion of discovery, defendants renewed their motion for partial summary judgment as to Houlahan's abuse of process claim, to which Houlahan filed an opposition.  In their filings, however, neither party addressed the threshold

question of whether it is the law of the District of Columbia or Utah that supplies the substantive law by which to measure Houlahan's claim.  Therefore, the Court denied without prejudice defendants' renewed motion and ordered that any future motion must address the threshold issue of which jurisdiction's substantive law should govern the abuse of process claim.  Defendants' second renewed motion and Houlahan's opposition to it addresses this threshold issue.

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment may be granted only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002).  A material fact is one that is capable of affecting the outcome of the litigation.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," as opposed to evidence that "is so one-sided that one party must prevail as a matter of law."  *Id.* at 248, 252.

A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant.  *Id.* at 255.  But the non-moving party's opposition must consist of more than mere unsupported allegations or denials; it must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Celotex*, 477 U.S. at 322.  If the evidence "is merely

3

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477

U.S. at 249-50 (internal citations omitted).

## B.  Choice of Law Analysis

A federal court exercising diversity jurisdiction applies the choice of law rules of the

forum state, *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C. Cir. 1996)

(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), here the District of

Columbia.  Under District of Columbia law, the first step in the choice of law analysis requires

the court to determine whether there is any conflict among the potentially applicable legal

standards.  *Young Women's Christian Ass'n of the Nat'l Capital Area v. Allstate Ins. Co. of

Canada*, 275 F.3d 1145, 1150 (D.C. Cir. 2002) (citing *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d

876, 882 (D.C. Cir. 1985)).  "Only if such a conflict exists must the court then determine,

pursuant to District of Columbia choice of law rules, which jurisdiction has the 'more substantial

interest' in the resolution of the issues." *Id.*  In tort cases, the substantial interest inquiry requires

consideration of (1) "the place where the injury occurred," (2) "the place where the conduct

causing the injury occurred," (3) "the domicile, residence, nationality, place of incorporation and

place of business of the parties," and (4) "the place where the relationship" was centered.

*Herbert v. Dist. of Columbia*, 808 A.2d 776, 779 (D.C. 2002) (quoting RESTATEMENT (SECOND)

OF CONFLICT OF LAWS (1971), § 145 (2)).

## III.  DISCUSSION

Defendants' renewed motion for summary judgment on Houlahan's abuse of process

claim does not require the Court to determine whether the District of Columbia or Utah has the

more substantial interest in Houlahan's abuse of process claim because the laws of both

4

jurisdictions[2] are the same and produce the same result when applied to the facts.  *See Eli Lilly &* *Co. v. Home Ins. Co.*, 653 F. Supp. 1, 5 (D.D.C.1984) (federal courts entertaining a diversity action will not engage in a choice of law exercise when the laws of the interested states do not conflict with one another).

Under District of Columbia law, abuse of process occurs when "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do."  *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980) (quoting *Jacobson v. Thrifty Paper Boxes, Inc.*, 230 A.2d 710, 711 (D.C.1967)).  There are two essential elements to an abuse of process claim:  "(1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge."  *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959) (emphasis in original).[3]  Utah

---

[2]     Utah, the place where the suit was filed, has an interest in governing the use of the courts in its jurisdiction.  The District of Columbia is where Houlahan resided at the time the lawsuit was filed and has an interest in protecting its citizens from allegations of wrongdoing.

[3]     Houlahan repeatedly cites *Neumann v. Vidal*, 710 F.2d 856 (D.C. Cir. 1983), and *Whelan v. Abell*, 953 F.2d 663 (D.C. Cir. 1992), in support of his argument that District of Columbia law does not require a distinct act outside of the initiation of process for the tort of abuse of process to lie and that collateral damage caused by the process itself is sufficient.  Both *Neumann* and *Whelan* set forth an expansive formulation of the abuse of process standard that is arguably inconsistent with the stricter standard formulated by the D.C. Court of Appeals in *Bown v. Hamilton*, 601 A.2d 1074, 1080 n.14 (D.C. 1992), and *Morowitz*.  Several courts in this jurisdiction properly have declined to adopt the expansive formulation outlined in *Neumann* and *Whelan.  See Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137, 160-61 (D.D.C. 2008)*, aff'd on other grounds, Nader v. Democratic Nat'l Comm.*, 567 F.3d 692 (D.C. Cir. 2009) (noting that *Neumann* and *Whelan* have been "superceded by more recent decisions embracing the more restrictive standards of *Bown v. Hamilton* and *Morowitz*"); *Bannum*, 383 F.Supp. 2d 32, 46 n.10  (D.D.C. 2005) (same); *see also Harrison v. Howard Univ.*, 846 F. Supp. 1, 2-3, n.3 (D.D.C. 1993).

law is similar: "to establish a claim for abuse of process, a claimant must demonstrate '[f]irst, an ulterior purpose; [and] second, an act in the use of the process not proper in the regular prosecution of the proceedings.'"  *Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 341 (Utah 2005) (alterations in original) (quoting *Hatch v. Davis*, 102 P.3d 774, 782 (Utah Ct. App. 2004)).  Regardless of which jurisdiction's law is applied, Houlahan fails to establish the elements of a cause of action for abuse of process.

Houlahan alleges that there is "ample evidence of Defendants' attempts to achieve ten related but distinct improper purposes."  Pl.'s Opp'n to Def.'s Second Renewed Mot. for Partial Summ. J. ("Pl.'s Opp'n") at 5.  Houlahan's allegations fall under two general alleged improper purposes: (1) "Defendants filed their suit in order to prevent publication of [Houlahan]'s work"[4] and (2) Defendants filed suit "in order to obtain public relations advantages."[5]  *Id.* at 5, 8.

---

[4]      Specifically, Houlahan alleges that WWASPS filed their suit to prevent publication by: (1) "Effecting a prior restraint on publication by intimidating [Houlahan]'s publisher"; (2) "Obtaining the dismissal of [Houlahan] from United Press International by using the lawsuit as a weapon with which to denounce [Houlahan] in the eyes of his editor"; (3) "Getting [Houlahan]'s editor not to run the series by using the lawsuit as a weapon with which to discredit [Houlahan] in the eyes of his editor"; (4) "Relaying charges against [Houlahan] to his editor"; and (5) "Wrongfully drawing [Houlahan] into distant and costly bad faith litigation in the hope that [Houlahan] lacked the resources to fight the false claims and would be bankrupted in the process."  Pl.'s Opp'n at 5-8.

[5]      Specifically, Houlahan alleges that WWASPS filed their suit in order to obtain a public relations advantage by using the lawsuit: (1) "To immunize themselves in the public eye against the revelations they expected should their primary object of preventing publication fail"; (2) "To divert media attention away from charges of abuse and neglect at their facilities"; (3) "As a weapon with which to discredit [Houlahan] in the eyes of the public at large"; (4) "To make public charges against [Houlahan], which, if made outside of court, would have been legally actionable"; and (5) "To attempt to give the allegations creditability [sic] in the minds of the general public where there is actually no creditability [sic] to these claims."  Pl.'s Opp'n at 8-10.

Defendants rejoin that Houlahan's evidence regarding the ulterior purpose of the lawsuit is irrelevant because the alleged ulterior purpose of the lawsuit and the stated purpose of the lawsuit are the same.  Defendants argue that "[Houlahan]'s claim that the filing of the lawsuit was successful in such things as causing bad publicity, causing [Houlahan] the expense of defending the lawsuit or stopping the publication of the articles, is no different than stating the express purpose of the lawsuit," since "the regular prosecution of the libel case against Houlahan would have achieved these ends"  Def.'s Reply to Pl.'s Opp'n to Second Renewed Mot. For Summ. J. at 2-3.  In addition to claiming that there was no ulterior motive to the Utah lawsuit, defendants further argue that Houlahan offers no evidence of any action taken by defendants following the filing of the Utah lawsuit that could constitute an abuse of process.

Defendants' arguments have merit.  Even assuming that Houlahan's allegations establish an ulterior purpose, his claim still fails.  "'[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, [even though] there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.'"  *Francisconi v. Hall*, 2008 WL 1971336 at *3 (Utah Ct. App. May 8, 2008) (quoting RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977)); *see also Scott v. Dist. of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting same language).

Houlahan contends that WWASPS filed suit against him in an effort to silence him.  By design, however, defamation claims, one of the claims in the Utah suit, are meant to silence individuals from making defamatory or otherwise harmful statements.  Therefore, the Utah suit was used "for the purpose for which it is intended."  *See Rusakiewicz v. Lowe*, 556 F. 3d 1095, 1104 (10th Cir. 2009) (applying Utah law in holding that "it is not a step 'beyond the purview' of

legal action for defamation to seek an end to the defendant's alleged defamatory statements–whether the defamation defendant regards those statements as truthful or not"); *see also Francisconi*, 2008 WL 1971336 at *3 (finding defendant's claim that plaintiff served process for the improper purpose of forcing vacation of the premises insufficient when "unlawful detainer proceedings are, by design, intended to 'force vacation of the premises'" (citation omitted)).[6]

Furthermore, Houlahan has failed to make a colorable showing that defendants committed a willful "*act* in the use of the process other than such as would be proper in the regular prosecution of the charge" *Hall*, 147 A.2d at 868 (emphasis in original); *see also Anderson Dev. Co*, 116 P.3d at 341 (holding that "to establish a claim for abuse of process, a claimant must demonstrate . . . an act in the use of the process not proper in the regular prosecution of the proceedings"). The only act beyond the mere issuance of process that Houlahan points to is the contact by James Wall with Houlahan's editor at UPI, Tobin Beck.[7]

---

[6]      Houlahan's allegation that defendants *knowingly* brought suit on an unfounded claim is not by itself sufficient to support an abuse of process cause of action under District of Columbia or Utah law.  *See Hall*, 147 A.2d at 868; *Keller v. Ray, Quinney & Nebeker*, 896 F. Supp. 1563, 1571 (D. Utah 1995); *see also Geier v. Jordan,* 107 A.2d 440, 441 (D.C. 1954) (stating that a claim that a lawsuit was brought for the unlawful purpose to extort money was not sufficient to support an abuse of process suit because it "amount[ed] to no more than an allegation that the . . . suit was based on an unfounded claim").  To permit the use of abuse of process in such a situation would blur a critical distinction between the tort of abuse of process and the tort of malicious prosecution, which lies where the action was brought without probable cause and terminated successfully in favor of the aggrieved party.  *See Bown,* 601 A.2d at 1080 n.14 (stating that "to the extent that the alleged tort is based upon a lack of sound foundation for the instigation of the possession action recovery would appear best determined within the limits of malicious prosecution").

[7]      In an attempt to satisfy the "act" element of the abuse of process claim, Houlahan also points to several acts that the defendants engaged in prior to the filing of the Utah lawsuit. The Court, however, does not consider these acts because an action for abuse of process "lies in

Houlahan alleges that defendants sent Wall, a partner in the public relations firm Freeman Wall

Aiello,[8] to contact Houlahan's editor "to use the lawsuit as a weapon to discredit [Houlahan] in

order to prevent publication of the series and cause his termination."  Pl.'s Opp'n at 6.  There is

nothing improper, however, about Wall's e-mail to Beck.  Wall simply informed Beck of the

lawsuit against Houlahan and assured him that UPI was not a party to the suit.  *See* Pl.'s Opp'n

Ex. 6.[9]  The contact between Wall and Beck falls far short of the usual case of abuse of process

where there is an attempt at extortion in a manner collateral to the litigation.  *See Hatch v. Davis*,

102 P.3d 774, 782 (Utah Ct. App. 2004) ("The usual case of abuse of process is one of some

form of extortion, using the process to put pressure upon the other to compel him to pay a

different debt or to take some other action or refrain from it." (quoting RESTATEMENT (SECOND)

OF TORTS § 682 cmt. b (1977))); *Scott v. Dist. of Columbia*, 101 F. 3d 748, 755-56 (D.C. Cir.

1996) (quoting same language).  No reasonable juror could find that defendants took any specific

action in connection with their filing of the Utah suit which can be characterized as unlawful or

not "proper in the regular prosecution of the proceedings."  Therefore, Houlahan is unable to

---

the improper use *after* issuance."  *Morowitz*,  423 A.2d at 198 (quoting *Hall*, 147 A.2d at 868;
*see also Kool v. Lee*, 134 P. 906, 910 (Utah 1913) (stating identical principle under Utah law).

[8]     James Wall and Freeman Wall Aiello are also defendants in this case.  Houlahan
does not allege an abuse of process claim against either of them.

[9]     The Utah lawsuit was filed a day before Wall sent the e-mail to Beck.  In the e-
mail, Wall informed Beck that "WWASPS will today serve a summons and complaint on
Thomas Houlahan."  Pl.'s Opp'n Ex. 6.

establish the essential elements of an abuse of process claim.[10]   Accordingly, defendants are

entitled to summary judgment on Houlahan's claim for abuse of process.

## IV.  CONCLUSION

Accordingly, it is this 5th day of January 2010 hereby

**ORDERED** that defendants' second renewed motion for partial summary judgment as

to Houlahan's claim of abuse of process [#103] is **GRANTED**.

Henry H. Kennedy, Jr.
United States District Judge

---

[10]     Defendants also argue that the *Noerr-Pennington* doctrine defeats Houlahan's abuse of process claim.  *See Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).  This doctrine holds that persons who petition the government for redress of their grievances are immune from liability for such activity under the First Amendment.  Because Houlahan's abuse of process claim fails on other grounds the Court does not reach the issue of whether the *Noerr-Pennington* doctrine also operates to defeat his claim.